JAMES WATSON

*v.*

THE WATSON MANUFACTURING COMPANY.

A drayman, who is in the regular employ of a corporation, and whose services are of a kind or class which the corporation must have in order to continue its business, is entitled to the protection given to employes by the sixty-third section of the act concerning corporations.

On petition of George Haring.   Order to show cause and depositions.

*Mr. R. P. Wortendyke,* for petitioner.

*Mr. A. B. Woodruff,* for receiver.

THE VICE-CHANCELLOR.

The petitioner asks to have a debt of $522.33, due to him from the defendants at the time this court took possession of their assets, declared a lien and entitled to preference in payment under the sixty-third section of the act concerning corporations (*Rev.* p. 188).   That section declares:

"In case of the insolvency of any corporation, the laborers in the employ thereof shall have a lien upon the assets thereof for the

amount of wages due to them respectively, which shall be paid prior to any other debt or debts of said company; and the word 'laborers' shall be construed to include all persons doing labor or service of whatever character, for, or as workmen or employes in the regular employ of such corporations."

The works of the defendants were located at Paterson, and their principal business was the manufacture of iron for the construction of bridges and buildings, and the erection of iron bridges and buildings. The petitioner is a drayman, or carman, who, for some years, has pursued his business at Jersey City. Prior to November, 1875, he carried goods and merchandise for any one who would employ him. In that month he made a contract with the defendants to do all their carting in Jersey City, and after that he carried all the iron and lumber they sent to Jersey City by railway, to such points as they directed it to be taken. His claim is for the balance due for the four months immediately preceding the appointment of the receiver. After the date of his contract he worked for the defendants regularly, and almost constantly and exclusively. He was in their regular employ, and entirely under their control in all matters within the scope of his employment. He did not hold to them the relation of contractor, so that the measure of duty of each to the other was fixed by their mutual promises, but he was their servant. His claim, so far as it is made up of wages for his own labor or service, is unquestionably entitled to the preference given by the statute. The difficulty the case presents is as to that part of his claim which is made up of compensation for the use of his horses and drays.

It has been held that the term "laborer" cannot be construed as designating one who contracts for and furnishes the labor and services of others, or one who contracts for and furnishes one or more teams for work, whether with or without his own services, but that such person is properly described as a contractor. *Balch* v. *N. Y. & Oswego Midland R. R. Co.*, 46 *N. Y.* 521. This decision was made under a statute creating a preference in favor of laborers

alone; but it will be observed our act is broader. It declares that the word "laborers" shall be construed to include all persons doing labor or service of whatever character as workmen or employes. Laborer, though less comprehensive than employe, is made its equivalent, and the correllative of employer. The word "employe" properly describes any one who renders labor or service to another, and in *Gurney* v. *Atlantic and Great Western Railway Co.*, 58 *N. Y.* 358; it was held to embrace attorney and counsel.

The petitioner's horses and drays were the tools or instruments of his employment or business. A carpenter, blacksmith or other mechanic, whose work can only be done with tools, may be regularly employed by a corporation to work for it with his own tools. In such a case I think there can be no doubt that his wages, though largely earned by the use of tools, would be preferred. Corporations engaged in the manufacture of bulky articles, must necessarily, in the conduct of their business, have a large amount of carriage by vehicles done in the transfer of raw material from depots and wharves to their works, and in the removal of manufactured articles from their works to points where they may be delivered to common carriers to be carried to market. Such work or service is indispensable to the continuance of the business of such corporations; without raw material the manufactured article could not be made, and unless carried to market the article itself would be useless. The services of carriers of the description of the petitioner were quite as necessary and essential to the continued operations of the defendants as those of any class of workmen rendering labor or service to them. Certainly much more vitally essential than those of a porter, clerk or book-keeper, and yet they are generally regarded as being clearly within the provision of the statute. It has been held that one of the main purposes of this act is to prevent those persons whose labor is indispensable to the continuance of the business of a corporation, from abandoning it, and thus suspending its operations, whenever they become alarmed by fear of losing their

wages. *Lehigh Coal and Navigation Co.* v. *Central R. R. of N. J.*, 2 *Stew.* 252. A sudden and general desertion would, in many instances, result in complete ruin to all concerned. The principal design of this statute is to erect a guard against such disasters. I think it is quite obvious that the petitioner belongs to the class of persons which the legislature intended to protect by the enactment of this statute, and his claim therefore must be preferred.

The usual order will be advised, declaring that the petitioner's debt is entitled to the preference given by the statute, and that it shall be paid by the receiver when in funds, and when payment can be made without prejudice to other claims of equal or superior rank.